# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

## STATE OF MAINE.

---

HENRY RHODA *vs.* MARGARET ANNIS.

Piscataquis.   Opinion February 16, 1883.

*Tort.   Principal and agent.   Fraudulent misrepresentations.   Sales.   Deceit.*
*Evidence.*

A principal is liable in an action of tort for the fraudulent misrepresentation
of his agent made within the scope of his authority.

In an action on the case for fraudulent misrepresentations in the sale of a
farm, which were alleged in the writ to be among others, "that said farm
for several years then last past had produced and cut eighteen tons of hay
each year," that a certain portion of the farm "was almost entirely free
from rocks and stones and of smooth surface," and "that in the season
preceding, to wit, of A. D. 1878, forty sheep, two horses, three cows and
six young cattle were pastured through the whole pasturing season upon
said farm," it was held that the representations were statements of material
facts, and sufficiently definite to be actionable.

In such an action, evidence in relation to the quantity of snow on the ground, and the opportunity the plaintiff had to inquire of the neighbors and the refusal of the agent to go a second time upon the land, is admissible not as tending to show a substantive cause of action, but as bearing upon the negligence of the purchaser.

In such an action it was held that the question of due care on the part of the purchaser was properly left to the jury.

ON EXCEPTIONS.

Case, for deceit in the sale of a farm. The writ was dated January 21, 1880. Plea, general issue. Verdict for the plaintiff.

### (Declaration.)

"In a plea of the case, for that on the twelfth day of April, A. D. 1879, at said Sebec, in consideration that the plaintiff, at the special instance and request of said defendant, would buy, and take conveyance from said defendant of a certain farm or tract of land situated in said Sebec, hereinafter described, for the sum of nine hundred dollars, to be paid by plaintiff to said defendant, the said defendant, in order to induce the plaintiff to make such purchase and take such conveyance, and contriving and intending to cheat and defraud the plaintiff, then and there knowingly, falsely and fraudulently and deceitfully represented and warranted to the plaintiff that said farm for several years then last past had produced and cut eighteen tons of hay each year, that eighteen tons of hay had been and were in the years immediately preceding annually cut and taken from said farm; that that part of said farm which was down to grass, and upon which said eighteen tons of hay were so represented to have been cut as aforesaid, was almost entirely free from rocks and stones, and of smooth surface, and could be easily plowed with a span of horses, no stones interfering with said plowing; that there were then fifty acres of cleared land upon said farm, twenty-five acres of which were under a high state of cultivation; that there was a good amount of pasturage upon said farm, and that in the season preceding, to wit: of A. D. 1878, forty sheep, two horses, three cows and six young cattle were pastured through the whole pasturing season upon said farm; that there were

standing upon said farm certain valuable ash trees, to wit: a large lot of ash trees, worth more than one hundred dollars, that she had been offered one hundred dollars for said trees, but considered them worth more to the farm, as the cutting of said trees would greatly depreciate the value of said farm; that said ash trees were growing very rapidly, and were annually increasing in value by a large per centum of their then value, and that said farm was then worth nine hundred dollars ($900); and plaintiff says if said representations and warranty had been true, said farm would then have been worth a large sum, to wit: the sum of nine hundred dollars; and the plaintiff avers that he, being ignorant of the premises, and giving full credit to said false and fraudulent and deceitful warranties and representations of the said defendant, and being thereby induced to purchase the same, he did then and there purchase and take a conveyance of said farm or real estate of said defendant, and did then and there pay therefor to said defendant said sum of nine hundred dollars, as said defendant had specially requested as aforesaid, said conveyance from said defendant to the plaintiff being by her warranty deed. . . And now the plaintiff avers that in truth and in fact said farm or tract of land, at the time of the false, fraudulent and deceitful representations and warranty aforesaid, and at the time of the said conveyance thereof to the plaintiff, did not cut or produce eighteen tons of hay each year, and for several years then last past, and preceding said purchase of said farm by the plaintiff, had not produced and cut eighteen tons of hay annually or at any one season, but in truth and in fact during said times produced but eight tons of hay annually; that in truth and in fact, that portion of said farm upon which said eighteen tons of hay were alleged to have been so cut as aforesaid was not then almost or nearly free from rocks and stones, and could not be easily plowed with a span of horses, but in truth and in fact was then exceedingly stony and covered and filled with large rocks and stones, rendering it exceedingly difficult to plow or cultivate said land; and in truth and in fact, there were not fifty acres of cleared land upon said farm, but in truth and in fact, there were but thirty-five acres of cleared land upon said farm; and in truth

and in fact twenty-five acres of said land were not then under a high state of cultivation, but in truth and in fact there were then only ten acres thereof under a fair state of cultivation, and the remainder of the cleared land of said farm was very poor and barren; that in truth and in fact there was not a good amount of pasturage upon said farm, and forty sheep, two horses, three cows, and six young cattle, were not pastured during the whole of the season preceding, upon said farm, but in truth and in fact the pasture land upon said farm was exceedingly poor and barren, and incapable of producing sufficient grazing for said stock any considerable length of time, and in truth and in fact, but twenty-four sheep, three cows, and two horses, were pastured there in a small portion of said season of 1878; and in truth and in fact, there were not valuable ash trees growing upon said farm, worth a large sum of money, to wit, one hundred dollars and increasing rapidly in value, and for which defendant had been offered one hundred dollars; but on the contrary, there were but a small number of ash trees thereon, worth fifteen dollars only, and for which said defendant had never been offered one hundred dollars; and in truth and in fact, said farm, at the time of said false, fraudulent and deceitful warranties, representations and conveyance, so made as aforesaid, was not worth a large sum of money, to wit, nine hundred dollars, but in truth and in fact, was then and there worth no more than four hundred dollars, at most,— of all which the said defendant was then and there well knowing; whereby the plaintiff, upon said representations and warranties of said defendant, and upon said conveyance of said land, and said payment therefor as aforesaid, was then and there greatly deceived and defrauded, whereby an action has accrued to said plaintiff to recover of said defendant the loss and damage which the said plaintiff has sustained, by reason of the false, fraudulent and deceitful representations and warranty of said defendant, as aforesaid, which loss and damages he alleges to be the sum of five hundred dollars."

At the trial the defendant contended that none of the allegations in the writ of misrepresentations made were sufficiently formal and definite to require the defendant to answer, and that the

alleged representations were so indefinite, and so clearly the expression of an opinion, that they were not actionable, if false and fraudulent, and further, that some of them were not sufficiently negatived in the declaration, and for these reasons objected to the introduction of any evidence upon either and each of them. But the presiding justice overruled the objection, received the evidence, and instructed the jury 'that they might consider the evidence as bearing upon the following, viz:

1st. The representation as to the quantity of hay produced the preceding and for several years then last past.

2d. The representation that the land upon which the grass was cut was almost entirely free from rocks and of smooth surface.

3d. The representation as to the stock pastured on the farm the preceding year, and that if the plaintiff had satisfied them by a preponderance of evidence in his favor of the truth of the several elements of fraud necessary for him to establish in accordance with instructions given in regard to either of said allegations, then upon such they should assess the damages resulting.

Other material facts in the defendant's exceptions are sufficiently stated in the opinion.

*A. G. Lebroke* and *W. E. Parsons*, for the plaintiff, cited: 2 Greenl. Ev. (10 ed.) § 121; *Locke* v. *Stearns*, 1 Met. 562; *Fitzherbert* v. *Mather*, 1 T. R. 12; *Lobdell* v. *Baker*, 1 Met. 203; *Bryant* v. *Moore*, 26 Maine, 84; *Weed* v. *Panama R. R. Co.* 17 N. Y. 363; *Goddard* v. *G. T. Ry.* 57 Maine, 202; *Howe* v. *Newmarch*, 12 Allen, 55; *Union Bank* v. *Campbell*, 4 Hump. 394; *Concord Bank* v. *Gregg*, 14 N. H. 331; *Linsley* v. *Lovely*, 26 Vt. 123; *Barber* v. *Britton et al.* 26 Vt. 112; *Hunter* v. *H. R. I. & M. Co.* 20 Barb. 493; *Fishback* v. *Brown*, 16. Ill. 74; *Moir* v. *Hopkins*, 16 Ill. 313; *N. Y. &c. Tel. Co.* v. *Dryburg*, 35 Pa. St. 298; *Chouteaux* v. *Leech*, 18 Pa. St. 224; *Ezell* v. *Franklin*, 2 Sneed, 236; *Williams* v. *Getty*, 31 Pa. St. 461; *Henderson* v. *R. R. Co.* 17 Tex. 560; *Stickney* v. *Munroe*, 44 Maine, 204; 1 Pars. Contr. § § 1, 9, (4th ed.)

*J. B. Peaks*, for the defendant.

Defendant does not deny but that she is liable for any deceit used by her agent in the sale of the farm, but she is not liable in this form of action until it is shown that she knew of the deceit or ratified it. No question of her knowledge of the alleged deceit or of her ratification was presented to the jury, but they were instructed that she was liable for all the acts of her agent in making the sale.

It would seem to be a queer principle of law that a person could be convicted of a fraud committed by an agent and about which the principal knew nothing till he was arrested. Yet such is the logical result.

It appears to be settled law that a principal is not liable in an action of deceit for the fraudulent representations of an agent made without the knowledge of the principal. *Chandelor* v. *Lopus*, 1 Smith's L. Cas. 238 ; *Dyer* v. *Lewis*, 7 Mass. 284 ; *Pearson* v. *Howe*, 1 Allen, 207 ; *Tryon* v. *Whitmarsh*, 1 Met. 1 ; Benj. Sales, 436–454.

I submit if a person can be liable in an action of deceit for a legal fraud without any intention to commit fraud. *Lobdell* v. *Baker*, 1 Met. 201 ; *Fitzsimmons* v. *Joslin;* 21 Vt. 129.

The allegations in relation to the representation as to the hay cut is too indefinite. *Kingsley* v. *Bill*, 9 Mass. 198 ; Kerr on Fraud, 82 ; *Keller* v. *State*, 51 Ind. 111, (1 Am. Crim. R.)

The plaintiff could have examined for himself as to the representations and the rule of *caveat emptor* applies. *Parlin* v. *Small*, 68 Maine, 291 ; 23 Pick. 256 ; 3 Allen, 380.

The testimony as to matters not alleged in the writ was inadmissible. *Parker* v. *Moulton*, 114 Mass. 99 ; *Bishop* v. *Small*, 63 Maine, 12 ; *Burleigh* v. *White*, 64 Maine, 23.

DANFORTH, J. This is an action to recover damages for deceit in the sale of a farm. The representations complained of were made by the defendant's son acting in her behalf. The jury were instructed that the "defendant was responsible for all the acts and representations of her agent in making the sale." This instruction does not make her responsible for the acts or representations of any person who was not her agent, or for such as were not

made in furtherance of the sale, or to accomplish that end. These things were first to be found by the jury under proper instructions as to the law. We must then assume that the son had authority as agent for his mother to make a sale of the farm, that the representations so far as they were submitted to the jury were made by him as a part of the negotiation for the purpose of bringing about the sale, that by means of them it was brought about, the conveyance was made, and that the defendant received the proceeds of the sale. In fact, all these things are conceded. The verdict affirms the fraudulent character of the representations, and that in making them the agent acted within the scope of his authority. This would seem to bring the case within the well established law, that the principal is responsible for such acts of his agent as are done within the scope of his authority, whether authorized or not, except by the general authority, to do the principal act.

In fact, this principle of law is conceded in this case, but it is denied that the defendant is liable in this form of action. It is said that being personally innocent of the fraud, she cannot be convicted of that which has been committed by another with no authority from her, except that which results from his agency. This may be true in a criminal prosecution, but not in a civil action. If she is liable that liability must be ascertained in the proper form of action. Here is no contract of any kind, express or implied, between the parties which can afford any remedy for the injury of which the plaintiff complains. He claims that a wrong, for which the defendant is responsible, has been done him. For that wrong he seeks a remedy. What remedy can he have except an action of tort? The counsel says two. He may rescind the contract, and recover back the consideration paid, or in an action for money had and received, recover the profits accruing from the fraud. But neither of these may be adequate to his injury. If he rescinds the contract he may perhaps lose all the consideration paid, and it would be difficult if not impossible to ascertain the amount received on account of the fraud, if that should be held to differ from the amount of damages recoverable in this form of action. But how does this change of

form relieve the defendant's feelings or reputation? In either case the action is founded upon a fraud, and one which must be proved. In either case it is not her own fraud but that of another for whose doings she is legally, though perhaps, not morally responsible.

The counsel relies largely, if not entirely, upon the English cases to support his views and some of them do so. But an examination of them will show that they are conflicting, many of them decidedly sustaining the instruction given to the jury in this case. It will, however, be noticed that in the most, if not all of them, the form of the action is not considered material. The object is to limit the extent of the liability to the advantages received from the fraud, applying a somewhat different test to the amount of damages to be recovered. It is unnecessary to refer to these cases in detail. They will be found collected and commented upon in Benjamin on Sales, § § 462—467 ; Bigelow's Leading Cases on Torts, pages 25 – 33.

The American cases are more uniform, and sustain the instruction complained of, both as to the form of action and extent of liability. Bigelow on page 23, says : "In America it has generally been held that an action of deceit may be maintained against the principal; but the cases are at variance as to the ground of liability." As are the cases, so we find the text books uniform in sustaining the liability of the principal in actions of tort for the wrongful acts of the agent done within the scope of his authority, even though the principal himself is innocent. In a note on page 443 in Benjamin on Sales, it is said : "Where an agent makes a false representation, or in any other manner commits a fraud in a purchase or sale, with or without the privity, or knowledge, or assent, of his principal, and the principal adopts the bargain and attempts to reap an advantage from it, he will be held bound by the fraud of the agent, and relief will be given to the other party to the transaction. The principle is that fraud by an agent is fraud by the principal ; that the principal should be bound by the fraud or misconduct of his own agent, rather than that another should suffer." To the same effect are the following authorities some of which are directly in point, and all

recognize the principle; 1 Chitty on Pleading, 16 ed. 91; 2 Green. Ev. § 68; 1 Parsons on Contracts, 73; Kerr on Fraud and Mistake, 111–112; Story on Agency, § § 308, 452; *Locke* v. *Stearns*, 1 Met. 560; *White* v. *Sawyer*, 16 Gray, 586; *Howe* v. *Newmarch*, 12 Allen, 49; *P. & R. R. Co.* v. *Derby*, 14 Howard, 468–486; *Pratt* v. *Bunker*, 45 Maine, 569; *Stickney* v. *Munroe*, 44 Maine, 195; *Goddard* v. *G. T. R.* 57 Maine, 202. In *Holbrook* v. *Connor*, 60 Maine, 578, the misrepresentations were made by an agent, but that fact was not even suggested as a defence, though the action was of the same form as the present. Numerous decisions in other States and in England, to the same effect will be found cited in the text books above referred to.

As already seen all the cases, both here and in England, hold the principal liable for the fraud of the agent to some extent when he has adopted the contract into which that fraud has entered, and if liable we see no good reason why that liability should not be co-extensive with the injury in accordance with the great weight of authority. If he would avoid this he may, as undoubtedly the law would authorize him to do, repudiate the contract, and restore to the injured party what has been taken from him. But in this case no such offer has been made, but defendant still holding the fruits of what the jury have pronounced a fraud denies any liability on her part.

Out of quite a number of alleged misrepresentations set out in the writ the presiding justice, under instructions to which no exceptions were filed either for omission of any law applicable or erroneous statement of that given, submitted three to the consideration of the jury excluding the remainder. An objection is made to these, that they are too indefinite to be actionable though in other respects accompanied with all the facts necessary to constitute fraud. That which refers to the quantity of hay cut the preceding years comes within the case of *Martin* v. *Jordan*, 60 Maine, 531, and is there held sufficient. The words fixing the time during which this quantity was cut, though somewhat indefinite do not make the material fact as to the quantity any less certain; nor is there any doubt that it includes the years

immediately preceding the sale. If no preceding year can be found in which that quantity was cut, and none appears in this case the falsehood of the statement would seem to be sufficiently apparent. If any such year had been found it would certainly not operate against the defendant. How far it would have been a defence or how many years the plaintiff must have proved are questions not raised here.

The second allegation submitted may be somewhat uncertain as to the number of the rocks which might be found consistent with the truth and honesty of the statement made. But difficulty in proof does not change the principle. The statement is clearly one of an existent fact and not a matter of opinion. It is a fact too, which is material to the value of the land. Whether it was sufficiently proved to have been false and fraudulent is not now the question.

The representation as to the amount of stock pastured the preceding year does not now seem to be questioned.

It is said that the second representation is not negatived in the declaration. Good pleading would undoubtedly require this. That part of it which relates to the absence of rocks is abundantly so. The evenness of the surface is part of the same representation and the whole is averred to have been false and fraudulent. If this is not sufficient there is no suggestion that in that respect the defendant did not have all her rights at the trial. The defect, if any, is amendable and there is no occasion for a new trial upon that point.

What representations are sufficient are pretty fully discussed in *Long* v. *Woodman*, 58 Maine 49 ; *Martin* v. *Jordan, supra; Savage* v. *Stevens*, 126 Mass. 207, and these representations so far as submitted to the jury clearly come within the principles there laid down.

It is further objected that the representation as to the rocks should not have been submitted to the jury for the reason that it appears that the plaintiff went upon the land and should have seen its condition, and therefore in this matter the maxim *caveat emptor* applies to him. This may be true as a proposition of fact or perhaps of law even, if there had been nothing to have

prevented his seeing them. But the case shows that there was an obstruction. There was considerable testimony tending to show that there was snow upon the ground. There may have been a conflict as the counsel says as to the depth, but it does not appear that any existed as to the fact itself. It follows then that whether the plaintiff was bound to look out for himself, or in other words was in the exercise of due care, depended upon the inference to be drawn from this testimony.

It is however objected that this testimony should not have been admitted because there is no allegation in the writ upon which it can be founded. There is no occasion for any. It is not offered to prove a substantive fraud against the defendant. She was responsible for the representation made and not for the fact that the land was covered with snow. This fact may have imposed an additional burden upon her for the misstatement. Nevertheless her responsibility is for that and that alone. The presence or absence of snow may have affected the duty of the plaintiff, but not that of the defendant. This view is perfectly consistent with the case of *Parker* v. *Moulton* 114 Mass. 99, relied upon by the defendant. In that case the representations set out in the writ were not actionable but the attempt was made to sustain them by other acts or statements of the defendant alleged to be fraudulent and done or made for the purpose of preventing the plaintiff from ascertaining the truth. In this case the representation is actionable, and the proof offered is not of any act or statement of the defendant, fraudulent or otherwise, but of a fact existing without the agency of either party and is important only as it has a bearing upon the question of care on the part of the plaintiff.

It is still further insisted that even with this evidence in, the question of care should have been ruled upon as a matter of law and not submitted as fact to the jury, but it is quite clear that whether the plaintiff negligently permitted himself to be deceived by the alleged false statements, or without due care, was an inference to be drawn from the evidence and was therefore for the jury. *Savage* v. *Stevens, supra,* settles this question and in accordance with well established principles.

The testimony in regard to the plaintiff's request to go upon the land the second time and what the neighbors might have told him is to the same effect. It was not introduced to show a substantive cause of action but as bearing upon the question of due care; a portion of it was also pertinent as giving additional force and emphasis to the statements previously made.

The testimony as to the number of acres in the pasture was not objectionable. There was an allegation of the number of acres of cleared land. That allegation however was excluded from the consideration of the jury, and when so excluded it necessarily carried with it all the testimony offered in its support. It is therefore immaterial, except so far as it may have some tendency to show the capacity of the pasture to support the amount of stock alleged. For this purpose it would seem to be admissible. If it has no such tendency it does not appear how the defendant can by any possibility have been aggrieved by its admission.

The testimony as to the condition of the pasture and the hay raised prior to and immediately following the sale was relevant as bearing upon the truth, or falsehood of the representations made. They were circumstances only the weight of which were for the jury.

Loring Town had testified as to the value of the farm without objection. There is no reason perceivable why he should not be permitted to state how that value was made up. Certainly no harm to the defendant could come from it.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and SYMONDS, JJ., concurred.